Good morning. May it please the Court. Mike Ginsberg on behalf of American Medical Response and American Medical Response Northwest. Your Honors, I want to focus today on two points. The first is that the District Court failed to identify any interest of the State of Colorado in having its laws applied in this instance to deny coverage to non-residents of Colorado or to a resident of Colorado considering American Medical Response, Inc. So what, Mr. Bloomberg, do you think that the law of Colorado is any different from the law of Oregon once we get rid of Hauser, right? Well, I agree with you, in fact, that when I look at the law, I think the judge made a mistake twice. The first mistake he made was in the determination whether Hauser was different from the law of Oregon and whether it properly — whether it properly predicts the law of Colorado, number one, or whether its facts are even relevant to the situation we have here. And second, if he then decides that there's a conflict of law, he didn't do that properly. And so I was starting with the conflict of law issue because that's — I think you're right, Your Honor, we need to go first to determine whether it's, in fact, a conflict. And I will deal — address that first. If you look below Hauser, Hauser is a — a situation in the case where the trial court had determined — Well, it wasn't a negligence case. It wasn't a negligence case, exactly, because the trial court — It's a counter-cliability for intentional acts which the employer willfully allowed. That's it. Well, the — the finding of the trial court was that the — the employer had, in fact, intended or willfully allowed the conduct of — of the assault. We have no facts that support that kind of finding in this case. We have no factual record. In fact, the underlying liability in this case is for negligence. And so Hauser specifically — Hauser, of course, specifically — Well, let me — let me take you on on that. The affidavit of Ms. Medeiros talks about the one case that's been adjudicated herring as being a negligence case, and it certainly — the record does show that there was instruction on negligence and there was a finding on negligence. But I haven't found the word negligence in any of the other complaints. They talk about the responsibility of AMR in selecting and training and supervising Mr. Hauser, but I don't see the — the usual language in there that there was a lack of reasonable care and that the lack of reasonable care was the cause of the accident — of the injuries involved herein. Do you read those complaints as negligence complaints? Right. Yes, Your Honor. We read them as negligence complaints in two ways. First, those are allegations that we haven't had a — most of those cases were not tried. The herring case went to the court of appeals, and we recently got a decision from the court of appeals on the vulnerable person abuse statute where the court says there's no mens rea requirement to find liability there. So that's clearly a negligence situation. They're finally applying that — On herring. You're talking about herring. In herring, yes. And now you're asking about the other complaints. Right. The — Because I read them as battery complaints. And as battery complaints, there's also a lot of allegations regarding selection and training and supervision. And I'm not sure how to make that into a negligence claim when the word negligence or lack of reasonable care doesn't appear in the complaints. I'm having some trouble with that. Well, part of it is we're here on a record where we haven't had a trial in the underlying — in the coverage case. And so we haven't had a chance to put forth any evidence in the coverage case with respect to what the underlying claims were. A number of those claims were settled. But you're right, Your Honor. Some of those complaints are drafted in order to try to create a punitive damages situation or something like that. So they do allege, in fact, some things that would suggest they're trying to prove intent on the part of the employer. But this is not a duty to defend case. This is a duty to indemnify case. And so the question is whether at some point they have a duty to indemnify. In other words, what are the actual findings in the underlying case? Is there any finding that American Medical Response Northwest intended by its conduct to allow this behavior to occur? We put in affidavits in the summary judgment process of experts in the field of emergency response, of management of ambulances, companies, and those kinds of things to try to demonstrate that the duty of care was, in fact, met. But it is a negligence. So our position is that these are, in fact, negligence cases because American Medical Response Northwest wasn't in the ambulance. I mean, there's no battery by American Medical Response. Its employer, employees, excuse me, acted improperly. There's just no question about that. He admitted that he acted improperly. The question is ultimately whether, on the underlying cases, whether there's liability for that. And in the coverage cases, whether there's liability, excuse me, coverage for American Medical Response Northwest. Is it a negligence claim? Is it a claim that is covered by the policies? And the only issue is. Is this a negligence claim as presently pleaded and as presently shown to the district court judge? Or is it only responding as superior for intentional acts? Well, in some cases it's both. There are 15 different complaints or 13 different complaints. And so some of the complaints allege negligence. Some of the complaints allege intentional conduct. Some only allege Vulnerable Person Abuse Act claims because the statute of limitations had expired on tort claims. And so there are differences among the claims. We haven't gotten to the point with the trial court where we've had a chance to lay out the differences in what those might be. So the question is, at the end of the day, is there the potential for insurance coverage that gives American Medical Response Northwest the opportunity to demonstrate its entitlement to coverage? Let's talk about potential. For my sins, I'm from California. And we have a very liberal interpretation of coverage based on potential liability. It doesn't have to be actual liability. It has to be the liability. The coverage has to be extended if there is the potential for liability. Is it your position that all these complaints have the potential for negligence instructions and negligence findings? I think that's exactly it. Exactly. That's exactly the point. And that's the point we made below, that all of these claims essentially are for negligence because that's all that American Medical Response Northwest does. They might be for both. The evidence might come in that this was intentional action which the defendant and the insured knew was about to happen and was willful in the same way that Hauser. The interesting thing is the only case that went to jury was the Herring case. And Mrs. Herring was the last of the alleged victims. And so she, in fact, attempted to prove that there was intent on the part of American Medical Response Northwest by the evidence that she put in. That's why all these other people have come out now because her lawyers were contacting them to say were you in the ambulance and what reports. And so the discovery in the Herring case dealt directly with what knowledge American Medical Response Northwest had at the time Mrs. Herring was first. And that jury verdict and judgment was based solely on negligence. There were no punitive damages? There were no punitive damages. And, in fact, the Court just now, recently, February 21st, came out with the court of appeals on the appeal on the Vulnerable Persons Abuse Act claim and said that there is no requirement for mens rea. So even though the damages were trebled, it's not trebled because there was intent or any proof of intent. And it simply required a status of a person being vulnerable and a liability. And so, in fact, the Herring decision is a negligence decision, and that's the only one that's been tried. The insurers may try to say that they have the right to retry that case or retry those allegations, but we haven't gotten to that point. I'm not sure they're right about that, but we haven't gotten to that point. And I would suggest, Your Honor, that both Colorado and Oregon are equally as broad as California in providing insurance rights. Houser's, you know, again, the trial court relied on Houser, but Houser's a situation where there was an explicit finding below that the employer intended to cause harm. If you look at the series of Colorado cases that deal with intent and separation of insurance and whether the standpoint of the insured issue with respect to intent, you'd find that Colorado is just as broad as Oregon. So I don't think there is really a conflict. We think it's a false conflict based on the choice of law issue. The other piece on the choice of law issue, Your Honor, is that the court ignored the Irwin requirement in Oregon, which requires that the court, after it determines there's a conflict, next has to look at the candidate states and determine whether or not there's an interest on the part of those states. And the court doesn't do that here. It never tries to identify any interest in Colorado. How is Oregon's interest stronger than Colorado's? Well, Oregon's interests are very strong in this case. Every one of the underlying plaintiffs is an Oregon resident. But they're not parties to the policy. They're not parties to the policy, but they are parties to the claims. And so you're brief makes a reference at some point about seamless coverage. But, in fact, if you look at the claimant's potential plaintiffs against the insured defendant, you're not talking about seamless. You're talking about look at what State the claimant comes from. All of these claimants are from Oregon. But it's the same policy that's going to cover claimants against defendants' facilities in, what, 40 States or something like that. Right. And section 193 of the restatement suggests in that situation that you would look at where the claim arises, look at the specific claimant. Well, that's exactly not what your brief argues for when it says there's supposed to be seamless coverage. If there's seamless coverage, you suspect there's one policy applied elsewhere. And if you ask yourself where is this policy based, Oregon wouldn't seem to be particularly high on the list. Right. So let me do it in two steps. The first step is, under the Oregon choice of law process, the first question isn't section 6 of the restatement or section 188 or 193. The first question is, did both candidate States have an interest? And Oregon's interest is that, in fact, the insured in this case, American Medical Response Northwest, is an Oregon resident. It's an Oregon corporation. Its principal place of business is here in Oregon. Its corporate parent is American Medical Response, Inc., which is based in Colorado. So you have a ---- And that's who got the policy. Well, the policy was issued actually to the parent of American Medical Response, Inc. So it was a corporate policy that covered operations really throughout the country. But the step is ---- How does that give Oregon a stronger claim than Colorado? Well, the first question, Your Honor, is whether Colorado has an interest at all in this case. It's the policyholder, and the policyholder's business is there, the central place of business, the principal place of business is Colorado. In order for Colorado to have a choice of law, an interest, we would have to be saying that Colorado's interest in this case is to deny coverage to its policyholder, to its resident, in favor of nonresident insurers. But the Court never went through that process. Colorado makes its law, and your client decides where its principal place of business is going to be. All of these, Mr. Ginsburg, all these policies have what's called a separation of insured provision. Now, doesn't that affect the choice of law analysis? Well, the separation of insured provision actually by its terms, Your Honor, applies to all of the issues in the policy, all of the policy provisions. It doesn't apply to one. So, yes, in fact, I think it would apply to the choice of law issue, that we would have the witnesses for the insurers, in fact, testify that their understanding was that you would look at each insured as if it were the only insured when a claim arose. So the separation of insured provision suggests that you would look at where the insured that's making the claim on the policy is located as part of the analysis. I hadn't even gotten to that point because I was still focused on the question of whether, in fact, Colorado has a more important, greater interest in Oregon and whether or not Oregon has an interest or not. Are you going to keep some time for rebuttal? I do. I want to save time for rebuttal. So thank you. Now, before we start the clock, there are two attorneys appearing on behalf of the two separate appellees. Is there any understanding as to what the total amount of time you're allocated is, 15 minutes? How is that going to be used? Your Honor, it's our goal to split this fairly evenly, if possible. Okay. Thank you. Good morning. My name is Steve Skinner and I represent National Union Fire Insurance Company of Pittsburgh, Pennsylvania. National Union stands before the Court today requesting that the U.S. District Court's October 21, 2011, opinion and order be affirmed. More specifically, we are seeking affirmation of a ruling that provides the parties to the National Union insurance contract with consistency and predictability in terms of how the contract is going to be interpreted and enforced. And I'm going to jump into a question that was posed by the Court earlier with respect to the nature of the allegations that were asserted against the corporate defendants. I would note that in all of the cases that were filed against the corporate defendants, there were allegations that the corporate defendants had taken action or were inaction that was intentional or with knowledge. And specifically, there were allegations that the corporate defendants knew or should have known of the propensities or activities of their employee, Lanny Hazard. And specifically, I'd also like to mention with respect to the Herring claim, which is a ---- Well, wait a minute. I'm taking a look now at Diane Turpening. The complaint is entitled Complaint Vulnerable Person Abuse. That's invoking the Oregon statute regarding vulnerable person, isn't it? That is correct, Your Honor. And in order to establish liability against a corporate defendant under Oregon's vulnerable abuse statute, there must be a showing that the corporation engaged in vulnerable person abuse by knowingly acting or failing to act is not a negligent standard that is applied for the purposes of a violation of vulnerable abuse. So you disagree with Mr. Blumberg's reading of the recent court of appeals opinion in Oregon in the Herring case. Is that right? Absolutely, I disagree with that. And the reason I would disagree with that is if you look carefully at that appellate court decision, what was being addressed there was whether the multiplier that's contained in the vulnerable abuse statute required some showing of mens rea before the court could multiply damages that were awarded by the jury under the vulnerable abuse statute. However, the court did not address the sort of the fundamental requirements of establishing liability under the vulnerable abuse statute, which is specifically Wait a minute. Are you telling me that the court said to be liable there has to be intentional act, but to treble the damages negligence is enough? You can't be saying that, can you? No. The court said there was no mens rea requirement with respect to the trebling of damages. Well, if there's no mens rea requirement with respect to the trebling of damages, how can there be a mens rea requirement for liability? Well, the statute itself requires a showing that there was either that the defendant knowingly acted or failed to act. So there is a proof requirement of knowledge on the part of the actor under the vulnerable abuse statute. That issue was not before the court on appeal in Herring. And I think it's important to note that with respect to that requirement in Herring, the jury specifically found that AMR Northwest, corporate defendant, did act with Now, there's been some discussion this morning about the interests of the State of Colorado versus the interests of the State of Oregon. It's important to focus on the fact that the dispute here is over the interpretation and enforceability of an insurance contract. It is not the underlying tort that is at issue here. And certainly the State of Oregon may have an interest with respect to the underlying tort claims. The State of Oregon does not have an interest with respect to the enforcement of the insurance contract at issue here. Well, but the underlying question is whether it makes any difference, right, whether you apply Oregon or Colorado law. Do you think it does? I believe it does. There is a – there is a – In what way? Because why? Well, if you look at the decision in Hauser, which was the subject of a significant amount of briefing in this case – You think Hauser controls here? I believe it does. Well, I believe Colorado law applies to this contract. And under Colorado law, Hauser has decided the issue of how we would treat insurance coverage for the purposes of employer liability for claims arising out of an employee's assaultive behavior. Wasn't Hauser clearly an intentional conduct case? It was clearly an intentional conduct case on the part of the employee. However, I think it's important to note that the analysis that the Hauser court went through – The employee, the restaurant manager, was also the employer, wasn't he? He was a cousin or the nephew. Wasn't there a finding that the people who owned the restaurant knew exactly what this man was up to? I think that there was evidence or findings that they ultimately knew. Right. But I think – And so therefore, they were willfully aiding and abetting his conduct, not negligently choosing him or supervising him or running him. If you analyze the decision in Hauser, the court focused on really two aspects. The first was determining how one decides whether there is an occurrence for the purposes of this type of claim. And in that, in Hauser, the court reviewed case authority from across the nation and concluded that there was an immediate cause test that would determine whether the cause was accidental or intentional. And in that case, since the immediate cause was the sexual assault of the employee, it was decided that there was no occurrence. However, the court went on and I guess in an alternative analysis discussed the intent of the employer and concluded under that set of facts that that did not change the analysis. However, the court did not base its initial on what I would characterize as ultimate ruling, that there was, in fact, a requirement that you had to establish intent on the part of the employer in order to bring a case within the holding of Hauser. The first half of that decision focuses on the cause, the ultimate cause, the immediate cause of the plaintiff's injuries. And in that case, they decided, they concluded that the sexual assault was that immediate cause. I see that my time is just about up. I'm going to defer to my colleague, Mr. Knowles. But we would request that the district court's decision be affirmed. Thank you. Knowles. I'm William Knowles. I represent Ace American Insurance Company. Ace American Insurance Company is an umbrella carrier. They are an excess policy that sits above $2 million per occurrence limits. We are not a primary carrier. I would like to address the issue of Hauser. But your policy follows form? We do not. We have a standalone policy. There is a policy that was issued below by an Ace Company, but it was fully fronted. In other words, that $2 million risk was fully retained by the insured. I want to point out a couple of things in Hauser and take up on an issue that Mr. Skinner was discussing, and that is the fact that in Hauser, the courts addressed this issue of willful conduct on the part of the employer. And what's important or critical in that opinion is that the court says, assuming this is important, and they said they weren't going to comment on whether it was important, but then they looked at the actual conduct of the employer. But what's important is what the court said before then in the opinion. And what the court said is that they were the court was persuaded that there would never be an occurrence or accident when there was an intentional assault, even if negligent hiring, negligent supervision or negligent retention is alleged. We believe it's Ace's position that ends the inquiry. If Colorado law applies, Hauser controls this fact pattern because we have exactly that fact pattern here. We have an employee who allegedly committed these assaults, these intentional acts. That should end the inquiry. It's over. Did the policy at issue in Hauser have a separation of insureds provision? Yes. And the court did address the separation of insureds issue and said it was not an issue here. In fact, I think if you look at Hauser, Hauser is premised on an evaluation of each respective insured's involvement. But the court also said if the immediate cause of the injury is an intentional act, there will not be insurance coverage for this. There is not an occurrence or an accident. And then if you also look at the opinion, the Colorado court looked to persuasive authority from other States that have also held that it does not constitute an accident or occurrence, and therefore there would not be coverage for the negligent supervision or hiring alleged in those cases. The other point I want to raise, it goes to a question that was raised or presented to opposing counsel, and that is the issue of looking, I guess, beyond the pleadings, as some States allow you to do in trying to determine if there's a potential for coverage. I want to remind this Court that Oregon is a strict pleading State. If it's not pled in the complaint, it is not given to the jury. So if negligence is not pled, it will not go to the jury. Do you have to use the word negligence or reasonable care under Oregon procedural law, or is permitted the sexual assault when they should have known about their employees' proclivities? Is that sufficient? No. We believe they would have to allege the actual elements of the cause of action of negligence. Status, duty, breach, cause, damages? Correct. And we believe if that's not alleged. Are there cases that say that in your brief? They're not in my brief, no. We are happy to submit supplemental briefing, but the issue I do believe we do address in our brief, the strict pleading rule in Oregon. For the reasons stated in our brief, we don't believe that there's convincing evidence that the Colorado Supreme Court would overturn Hauser. We believe Judge Jones acted appropriately in dismissing this claim, finding that there was no occurrence applying Colorado law and granting summary judgment in favor of the two defendants, and we'd ask that that be affirmed. Thank you. Thank you. Rebuttal. May it please the Court briefly. Two points on Hauser. First, the Hauser court specifically says, Hauser alleged and proved that Gondresnik's conduct was foreseeable and not unexpected on Mulligan's part. Under such circumstances, we cannot conclude that negligent hiring and supervision by Mulligan was an occurrence or an accident within the meaning of the policy. And it goes on to say that we need not determine whether an injury resulting from the foreseeable harm in a negligent hiring or supervision case could ever be found to be unexpected under an insurance policy provision in different circumstances. So they specifically did not address the case that we have here. That's the point. What about the point Mr. Knowles raised about Hauser and the fact that under Hauser, there's no coverage for this kind of incident? It's not an occurrence. That's what Hauser – well, on the other – What you just read from wasn't the discussion of occurrence. It was from the discussion of the separate exclusion. Let's go back to the subject of occurrence. On the issue of occurrence, to the extent that Hauser suggests that it's going to ignore this from the standpoint of the insured language and go to this immediate cause test, which Mr. Skinner referred to, then it's completely contradictory of a whole line of Colorado cases which separate the insureds and don't follow an immediate cause test. For example, in the McMillan case, which is an intentional shooting, there's coverage found for the owner of the vehicle, even though the shooting was done by a passenger or someone else in the vehicle. In the Jernigan case, which is an arson case, there's coverage for the wife when the husband intentionally burned down the house. That's a separation of insureds case. It's also an immediate cause case, because the immediate cause in both of those instances was, in fact, an act that was intentional, but there was coverage for the nonintentional conduct of the insured, of the other insured under separation of insured provision. In the life insurance context, in the Carroll case, the Court reiterates that you have to look from the – the word accident is never going to – is always going to be unexpected and unintended from the standpoint of the insured. Same thing for the Heckler Mining case and the Public Service v. Wallace case, which are pollution cases. Again, it's from the standpoint of the insured and is a separation in time. And so in all those cases, you have, under Colorado law, a separate intent analysis for the insured than for the immediate actor. Those are not immediate. The Court's just wrong. Kennedy. You're just saying Houser is plain wrong on that point. It's plain wrong to the extent it goes there. It doesn't need to go there for the decision, so it's all dicta in the first place. And Greystone tells us that you don't have to follow, which is the Tensor case, you don't have to follow dicta of a court of appeals, not the highest court, in trying to predict the court of appeal – excuse me, the Supreme Court standards. So I think those are all wrong. I did have a chart. I realize I'm out of time, so you can continue. You are out of time. All right. I'll sit up. Thank you.
judges: Tashima, Clifton, Bea